712 A.2d 1212

IN THE MATTER OF K.F.

Superior Court of New Jersey
Appellate Division

Argued January 7, 1998—Decided June 23, 1998.

Before Judges D'ANNUNZIO, A.A. RODRÍGUEZ and COBURN.

*Ann Marie Seaton,* Senior Deputy Attorney General, argued the cause for appellant the New Jersey Division of Youth and Family Services (*Peter Verniero,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel and on the brief; *Miriam A. Seltzer,* Deputy Attorney General, on the brief).

*Cecelia Urban,* Assistant Deputy Public Defender, argued the cause for the respondent K.F. (*Ivelisse Torres,* Public Defender, attorney).

The opinion of the court was delivered by

RODRÍGUEZ, A.A., J.A.D.

The New Jersey Division of Youth and Family Services (DYFS) appeals from a dispositional order of the Family Part ordering it to provide services and to pay for attendance at an out-of-state residential drug program for K.F., an eighteen year old who had violated the terms of his juvenile probation and who was not previously known to DYFS. DYFS contends that the dispositional order "forced the agency to act outside of its statutory mandate." We disagree and hold that the Family Part has jurisdiction to place an adjudicated juvenile delinquent under the care and custody of DYFS pursuant to *N.J.S.A.* 2A:4A–43b(5) even when the delinquent is between the ages of eighteen and twenty-one.

At age thirteen, K.F. began to experience depression and panic attacks for which he was treated with drug therapy. He began abusing illicit drugs at thirteen. Over the next few years, he participated in numerous drug rehabilitation and detoxification programs. Upon discharge from the last one, his inpatient psychiatrist Marjorie Somers, M.D., opined that he would "be best served in an ongoing dual diagnosis focused program as both his psychiatric illness and addiction need to be addressed."

Nine days before his eighteenth birthday K.F. was charged with conduct constituting juvenile delinquency. The adjudicatory hearing took place after K.F. became eighteen. The judge imposed a probationary sentence. However, five months later, urine monitoring results revealed that K.F. was using illicit drugs again. The judge entered a new dispositional order placing K.F. in the care and supervision of DYFS. DYFS was ordered to obtain an in-patient drug treatment program for him.

DYFS's District Office Manager informed the judge that DYFS could not provide services to K.F. because he was over the age of eighteen and neither he, nor his family had ever received services from DYFS in the past. The judge directed DYFS to file a motion for reconsideration.

DYFS moved for reconsideration. The judge denied the motion and ordered DYFS to immediately comply with the dispositional order. The judge also ordered a status hearing on K.F.'s placement in an in-patient drug treatment program and denied DYFS's application for a stay pending appeal.

At the first status hearing, the judge ordered DYFS to apply to two in-patient treatment programs for K.F. At a second status hearing, the judge ordered DYFS to identify appropriate treatment programs for K.F. and to provide funding therefor. At a third status hearing, the judge found that there was only one suitable program available for K.F.'s treatment, the Terraces Center for Addiction Medicine & Behavioral Health in Ephrata, Pennsylvania (Terraces). The judge ordered DYFS to immediately arrange for and fund in-patient drug treatment for K.F. at Terraces.

■ DYFS appealed and moved for acceleration of the appeal. We denied a motion for stay.[1] While this appeal was pending, K.F. was discharged from the Terraces facility and is currently residing in a half-way house in York, Pennsylvania, as an emancipated adult. DYFS is not currently providing any services or payments on behalf of K.F. Although the issue presented is somewhat moot, we elect to address the merits because the fact pattern is capable of repetition and it would serve the public interest, judicial economy and give guidance to DYFS to resolve the issue. *See DYFS v. J.B.,* 120 *N.J.* 112, 118, 576 *A.*2d 261 (1990).

On appeal, DYFS contends that the judge erred by requiring it to provide services to the adult, K.F. We begin our analysis by reviewing certain provisions of the Code of Juvenile Justice (Code). If a juvenile is adjudged delinquent, the Family Part may impose incarceration or any one of nineteen other dispositions

---

[1] *In the Matter of K.F.* (App. Div. April 4, 1997).

authorized by *N.J.S.A.* 2A:4A–43b. One of those dispositions is that the court may,

> Place the juvenile under the care of the Department of Human Services under the responsibility of the Division of Youth and Family Services pursuant to [*N.J.S.A.* 30:4C–1 to –40] for the purpose of providing services in or out of the home. Within 14 days, unless for good cause shown, but not later than 30 days, the Department of Human Services shall submit to the court a service plan, which shall be presumed valid, detailing the specifics of any disposition order. The plan shall be developed within the limits of fiscal and other resources available to the department. If the court determines that the service plan is inappropriate, given existing resources, the department may request a hearing on that determination.
>
> [*N.J.S.A.* 2A:4A–43b(5).]

Another section of the Code, *N.J.S.A.* 2A:4A–45, provides that the Family Part retains jurisdiction over an adjudicated delinquent for the duration of the disposition. In addition, the court may substitute any other authorized disposition after a hearing and notice to the prosecuting attorney if the court finds a violation of the condition of the dispositional order. *Ibid.*

On its face the order here, entered after K.F. violated the terms of his probation, is not contrary to the dispositional scheme of the Code. However, DYFS argues that it is not authorized to provide services to an eighteen-year old who was not previously known to the agency because it is mandated to serve children, and *N.J.S.A.* 30:4C–2(b) defines a "child" as "any person under the age of 18 years." Accordingly, DYFS has adopted a policy of denying services to anyone over eighteen unless that person was receiving services before age eighteen and meets certain continuation criteria.[2]

We disagree with DYFS's position because we find no support for it in the Code or in other pertinent statutes. In 1972 the Legislature lowered the age of majority from twenty-one to eighteen by enacting *N.J.S.A.* 9:17B–1 to –4. This meant that persons between ages eighteen and twenty-one were no longer to be prosecuted in the Family Part as juvenile offenders. However,

---

[2] This limitation is expressed in guidelines contained in DYFS's "Field Operations Casework Policy and Procedures Manual."

the Legislature expressly continued the Family Part's jurisdiction over persons between the ages of eighteen and twenty-one who had been adjudicated delinquent. *N.J.S.A.* 9:17B–3 provides in relevant part that a person eighteen or older shall be deemed an adult with full legal capacity. However, the statute did not diminish

the right of a court to take any action it deems appropriate and in the interest of a person under 21 years of age, or to require a change in action heretofore taken by a court with respect to a person under 21 years of age. . . .

We have held that this provision demonstrates the Legislature's intention to continue the Family Part's jurisdiction in protecting the interests of persons under twenty-one. *State in Interest of G.T.*, 143 *N.J.Super.* 73, 79, 362 *A.2d* 1171 (App.Div.1976), *aff'd* 75 *N.J.* 378, 382 *A.2d* 1124 (1978).

Although the language, meaning and purpose of these statutory provisions are clear, DYFS argues that the Family Part cannot place a young adult in its care because the Legislature intended that DYFS's mandate be solely to provide services to children. We agree that DYFS's primary mandate is to provide services for children. However, as DYFS concedes, it does provide services to young adults between the ages of eighteen and twenty-one who meet certain criteria.[3] More importantly, the Legislature has not amended the Code to provide that DYFS placement pursuant to *N.J.S.A.* 2A:4A–43b(5) is limited to persons under eighteen.

After a careful review of governing statutory law, we do not find any support for DYFS's position that the Family Part cannot impose the authorized disposition of DYFS placement upon an individual who is between the ages of eighteen and twenty-one. To the extent that DYFS has adopted guidelines that are contrary to this statutory scheme, they are invalid. *State in Interest of F.M.*, 167 *N.J.Super.* 185, 192–3, 400 *A.2d* 576 (Law Div.1979).

---

[3] *N.J.S.A.* 9:17B–2f specifically provides that DYFS is permitted to continue services to dependent and neglected persons between 18 and 21 years of age who are enrolled in a school or training program or who require a course of treatment for emotional cognitive or physical disability.

Although we conclude that the Family Part had the authority to place K.F. under DYFS' care, we note that the judge did not follow the procedure mandated by *N.J.S.A.* 2A:4A–43b(5). The judge should have permitted DYFS to develop a service plan for K.F. If the judge had determined that the service plan was inappropriate, then upon DYFS's request the Family Part should hold a hearing. Because K.F. remains on probation until his twentieth birthday, if the judge decides in the future to place him under DYFS's care again, the judge should observe the service plan procedure set by *N.J.S.A.* 2A:4A–43b(5).

Accordingly, the dispositional order which placed K.F. under the care of DYFS is affirmed.